UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SANDI N. JOHNSON,                       ]
                                        ]
    Plaintiff,                          ]
                                        ]
vs.                                     ]   2:10-cv-03030-LSC
                                        ]
STATE OF ALABAMA DEPARTMENT             ]
OF HUMAN RESOURCES, et al.,             ]
                                        ]
    Defendants.                         ]

MEMORANDUM OF OPINION

I.   Introduction.

The Court has for consideration Defendants' motion for summary judgment, which was filed on November 28, 2011. (Doc. 42.) Plaintiff Sandi N. Johnson sued State of Alabama Department of Human Resources ("ADHR") and ADHR employees Angela McClintock and Michelle Shelton, in both their official and individual capacities, for gender and pregnancy discrimination in violation of 42 U.S.C. § 1983. (Doc. 1.) The issues raised in Defendants' motion for summary judgment have been briefed by the parties and are now ripe for review. Upon full consideration of the legal arguments and evidence presented, the motion will be granted in all respects.

II.    Facts.[1]

ADHR hired Plaintiff Sandi Johnson ("Johnson") as a social case worker in the child abuse/neglect investigative unit of Jefferson County Department of Human Resources (the "Department") on May 11, 2009. Johnson was hired as a probationary employee.  At the time of Johnson's employment, Angela McClintock ("McClintock") was the Assistant Director for the Department, responsible for supervising the program manager of the child abuse/neglect program.  Michelle Shelton ("Shelton") supervised the child abuse/neglect investigative unit as Social Service Supervisor for the Department.

Johnson contends that she was visibly pregnant at the time she was hired by ADHR.  She testified that upon meeting Shelton, the latter exclaimed, "Oh no, they sent me another pregnant lady." (Johnson Dep. at 168.)  Shelton began supervising Johnson on August 24, 2009.  Shelton says that Johnson failed to submit case closures for the week of September 21, 2009.  She met with Johnson on September 28th to discuss the failure to close cases, timely transfer cases, or properly attempt first

---

[1]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

contacts with victims. Shelton later received a complaint that Johnson cursed and yelled at an individual on the phone on October 1, 2009, and hung up on him.

On October 2, 2009, Shelton and McClintock met with Johnson and told her that she was not being recommended for permanent employment. Johnson was given the option to resign or be terminated. Johnson ultimately chose termination. Shelton maintains that there was never any discussion of pregnancy during Johnson's tenure, other than to determine when she would need to start maternity leave.

Johnson tells a different story. Johnson argues that she was ahead in her work, never received any written reprimands, and was rated "meets standards" on her Probationary Performance Appraisal. According to Johnson, Shelton made statements that she did not think Johnson would make it to her due date. (*Id.*) Johnson also testified that McClintock told her that the job was too stressful and fast-paced for her due to the pregnancy, and because Johnson was going on maternity leave soon, it was best to not keep her as a permanent worker. (*Id.* at 147.)

Johnson filed a "General Complaint Form for Pro Se Litigants" against "Jefferson County Department of Human Resources and the State of Alabama" in this Court on July 23, 2010. Under "Statement of Claim," Johnson wrote:

> I was discriminated against due to my pregnancy while employed for the State of AL with the Jefferson County

> Dept of Human Resources. During my tenure there statements were made in concern of my pregnancy and the effect that it had on my duties by my supervisor as well as the assistant director at the time. At the time of my termination I was told that it was believed due to my pregnancy I was not able to handle the stress of the job and because I was due for maternity leave soon it would be best to let me go. [sic]

(2:10-cv-2012-WMA, Doc. 1 at 2.)

Johnson's *pro se* complaint was assigned to the Honorable William Acker, and given case number 2:10-cv-2012-WMA. Judge Acker issued an Order treating Johnson's Complaint Form as a complaint, granting her permission to proceed *in forma pauperis*, and ordering Johnson to file an amended complaint within thirty days that complied with the Federal Rules of Civil Procedure, "failing which this cause shall be dismissed for want of prosecution." (2:10-cv-2012-WMA, Doc. 3.) On August 26, 2010, Judge Acker dismissed Johnson's claim as follows:

> On July 26, 2010, the court entered an order granting plaintiff, Sandi Nicole Johnson, *in forma pauperis* status, but expressly ordering her within thirty (30) days from that date to file an amended complaint complying with the Federal Rules of Civil Procedure and, in particular, referring to the federal statutes being invoked and suitable for service on the defendants. Plaintiff having failed to comply with the said order, her above-entitled purported action is DISMISSED for want of prosecution.

(2:10-cv-2012-WMA, Doc. 6.)

Counsel for the Plaintiff entered an appearance with the Court on the day of the dismissal. The following day, on August 27, 2010, counsel filed a Rule 60 motion seeking an order vacating Judge Acker's dismissal and leave to amend the complaint. (2:10-cv-2012-WMA, Doc. 6.) Defendants opposed the motion. After a hearing on the merits, Judge Acker denied Plaintiff's motion on October 25, 2010, finding: "There was no mistake, inadvertence, surprise, excusable neglect, or any other reason justifying relief from an order that was completely and transparently promised if plaintiff did not timely amend." (2:10-cv-2012-WMA, Doc. 13 at 1.) Plaintiff did not appeal.

The parties agreed that the action before Judge Acker was a Title VII claim. (Johnson Dep. at 155-57.) Plaintiff filed this case under 42 U.S.C. § 1983 on November 8, 2010.

III.   Standard.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[2] The party moving for summary judgment "always bears

---

[2] Although Fed. R. Civ. P. 56 was amended on December 1, 2010, "the standard for granting summary judgment remains unchanged." Fed. R. Civ. P. 56 advisory committee's note (2010

the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56 "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted); *see also* Fed. R. Civ. P. 56(c). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp.*, 281 F.3d at 1224 (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

---

Amendments).

IV.   Analysis.

Plaintiff sues Defendants under 42 U.S.C. § 1983 ("§ 1983"). In order to maintain a § 1983 action, "the conduct complained of must have been committed by a person acting under color of state law and must result in a deprivation of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *Scott v. Dixon*, 720 F.2d 1542, 1545 (11th Cir. 1983), *Brown v. Miller*, 631 F.2d 408, 410 (5th Cir. 1980)). Plaintiff contends that Defendants violated her rights under the Equal Protection Clause of the Fourteenth Amendment when they terminated her employment because of her pregnancy. Defendants argue that they are entitled to summary judgment because the Equal Protection Clause does not protect against pregnancy discrimination, and Plaintiff has not established intentional gender discrimination.

"The Equal Protection Clause of the Fourteenth Amendment generally requires government entities to treat similarly situated individuals alike." *Alford v. Consolidated Gov't of Columbus, Ga.*, 438 Fed. Appx. 837 at *839 (11th Cir. 2011) (citing *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1313 (11th Cir. 2006)). "In a traditional employment case brought under the Equal Protection Clause, an employee asserts that

he was discriminated against on account of his membership in an identifiable or protected class, such as race, religion, sex, or national origin." *Id.* (citing *Engquist v. Oregon Dep't of Agriculture*, 553 U.S. 591, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008)). Pregnancy, alone, is not a protected classification under the Equal Protection Clause. *See, e.g.*, *Geduldig v. Aiello*, 417 U.S. 484, 494-95 (1974); *Lawson v. Curry*, 244 Fed. Appx. 986 at *989 (11th Cir. 2007). However, "[s]ince at least 1979[,] it has been established that the Equal Protection Clause provides a constitutional right to be free from unlawful sex discrimination and sexual harassment in public employment." *Snider v. Jefferson State Comm. College*, 344 F.3d 1325, 1331 (11th Cir. 2003) (quotations omitted). Plaintiff argues that pregnancy discrimination in this case constitutes sex discrimination because it is based on gender stereotypes. (Doc. 45 at 29.)

"A classification based on pregnancy is a sex-based classification." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 327 (1993). However, the U.S. Supreme Court has held that classification based on pregnancy is not necessarily equivalent, "for equal protection purposes," to unlawful gender-based distinctions. *Id.* (citing *Geduldig*, 417 U.S. at 496 n.20 ("While it is true that only women can become pregnant, it does not follow that every legislative classification concerning pregnancy is a sex-based classification like those considered in *Reed*, supra, and

*Frontiero*, supra.")). A plaintiff cannot establish a gender discrimination claim based on pregnancy under the Equal Protection Clause "[a]bsent a showing that distinctions involving pregnancy are mere pretexts designed to effect an invidious discrimination against the members of one sex or the other." *Clanton v. Orleans Parish School Bd.*, 649 F.2d 1084, 1095 (5th Cir. 1981)[3] (quotations omitted).

Plaintiff has not proffered admissible evidence that Defendants terminated her for any gender-related reason or stereotype aside from the pregnancy itself. According to Plaintiff, her supervisor exclaimed, at the time of their meeting, "Oh no, they sent me another pregnant lady," and commented she did not think Plaintiff would make it to her due date. (Johnson Dep. at 168.) Plaintiff contends that when she was terminated, she was told she was being let go because she could not keep up with her work due to her pregnancy and would be taking maternity leave. (Doc. 45 at 8-9.) Plaintiff cites *Back v. Hastings on Hudson Union Free School Dist.*, 365 F.3d 107 (2d Cir. 2004), for the proposition that unlawful gender stereotyping exists when an employer concludes that "a woman cannot be a good mother and have a job that requires long hours, or in the statement that a mother who received tenure would not show the same

---

[3] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

level of commitment she had shown because she had little ones at home." 365 F.3d at 120 (quotations omitted).  However, Plaintiff has not submitted any evidence that she was discriminated against because of stereotypes of motherhood.  Plaintiff already had a child at the time of her employment (Johnson Dep. at 137), and no mention was made of her inability to do her job with a child or children at home.  Viewing the evidence in the light most favorable to the Plaintiff, all evidence of discrimination relates solely to the condition of pregnancy.  This is not a Title VII case.  Plaintiff has not produced sufficient evidence to convince a reasonable jury that Defendants violated the Equal Protection Clause of the Fourteenth Amendment.

Because there is not enough evidence to establish an Equal Protection violation, it is unnecessary for the Court to address Defendants' contention that Plaintiff's claims are barred by Judge Acker's dismissal in 2:10-cv-2012-WMA.

V.   Conclusion.

For the reasons stated above, Defendants' motion for summary judgment will be granted in all respects.  A separate order will be entered.

Done this 20th day of March 2012.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
139297